**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

DAVID CHEESEBREW,

          Plaintiff,

v.                                  CIVIL  ACTION  NO.  3:09-1129

FELMAN PRODUCTION, IND.,
A Delaware corporation, and
MERDITH MARKER,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's Motion for Remand (Doc. 6).  Because, as further explained below, Defendants have failed to demonstrate that this Court has subject matter jurisdiction, removal was not proper.  The Court **GRANTS** the motion and **ORDERS** the matter stricken from the docket and remanded to state court.

In addition, this case was designated as the lead case among thirteen similar actions, for consideration of the motion to remand.  The reasoning  and ultimate decision to remand this case is applicable to each of the other twelve related cases.  As a result, the Court **ORDERS** the following cases be remanded to state court as well: (No. 3:09-cv-1130) *Dennison v. Felman Production, Inc.;* (No. 3:09-cv-1131) *Gibbs v. Felman Production Inc.;* (No. 3:09-cv-1132) *Hall v. Felman Production, Inc.;* (No. 3:09-cv-1133) *Lieving v. Felman Production Inc.;* (No. 3:09-cv-1134) *Petrie v. Felman Production, Inc.;* (No. 3:09-cv-1136) *Rickard v. Felman Production, Inc.;* (No. 3:09-cv-1137) *Salla v. Felman Production, Inc.;* (No. 3:09-cv-1138) *Sowards v. Felman Production, Inc.;* (No. 3:09-cv-1139) *Stout v. Felman Production, Inc.;* (No. 3:09-cv-1140) *Taylor*

*v. Felman Production, Inc.;* (No. 3:09-cv-1142) *Weethe v. Felman Production Inc.;* (No. 3:09-cv-

1143) *Whalen v. Felman Production, Inc.*

## Background[1]

At the time of the incidents that give rise to this case, Plaintiff was employed at the Mason

County, West Virginia facility of Defendant Felman Production, Inc ("Felman"). He worked as a

crane operator and was a member of the United Steel, Paper and Forestry, Rubber, Manufacturing,

Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC, Local 5171

("Union"). As a results of membership in the Union, terms and conditions of Plaintiff's employment

were established through a Collective Bargaining Agreement, negotiated by the Union and Felman.

On September 2, 2008, Felman instituted drug testing of all of the employees in its Mason

County facility. Plaintiff and others were forced to submit urine samples for urinalysis. Each

employee was required to surrender his or her sample while under observation. Another drug test

was administered, under similar conditions, on February 9, 2009. Plaintiff complains that he was

not working in a safety sensitive position at the time of these tests, also, that Defendants had no

reasonable good faith objective suspicion that Plaintiff might have been be using drugs. After

submitting to these two tests, Plaintiff argues that Defendants are liable for invasion of privacy as

a result of Felman's drug testing procedure.

---

[1]Plaintiff's complaint contained succinct factual allegations. Along with their notice of removal, Defendants attached a copy of the Collective Bargaining Agreement and an exhibit entitled "Negotiated Drug Policy." A more extensive factual description was provided by Defendants in their response to the motion to remand. Because, however, the Court is limited to a consideration of facts on the record at the time of removal it will not consider evidence or statements of fact submitted with Defendants' response. *See Lowrey v. Alabama Power Co.*, 483 F.3d 1184, 1213-15 (11th Cir. 2007) ("In assessing whether removal was proper in such a case, the district court has before it only the limited universe of evidence available when the motion to remand is filed – i.e., the notice of removal and accompanying documents.")

The issue now before the Court does not concern the merits of the case, but rather the propriety of removal.  Plaintiff originally filed this case in the Circuit Court of Mason County, West Virginia, and argues that it should be remanded back to that state court.  Defendants contend that removal is proper as the Plaintiff's state law claims – for invasion of privacy – are preempted by § 301 of the Labor Management Relations Act.

## Analysis

Pursuant to § 28 U.S.C. § 1441 removal is proper "only if 'the district courts of the United States have original jurisdiction'" over the matter.  *Lontz v. Tharp,* 413 F.3d 435, 439 (4th Cir. 2005).  The burden to demonstrate federal jurisdiction rests upon the removing party.  *Id.*  If the federal court determines that it lacks jurisdiction, "the case shall be remanded."  28 U.S.C. § 1447.

A removing party can satisfy jurisdiction in three ways.  First, a defendant may remove a case if the statutory requirements for diversity jurisdiction are met.  *Lontz,* 413 F.3d at 439; *see also,* 28 U.S.C. §§ 1332, 1441.  Second, removal is appropriate if the face of the complaint raises a federal question.  *Id.* (citing *King v. Marriot, Int'l, Inc,* 337 F.3d 421, 424 (4th Cir. 2003)); *see also,* 28 U.S.C. § 1441(b).  Finally, a court will have removal jurisdiction when "the subject matter of a putative state law claim has been totally subsumed by federal law – such that the state law cannot even treat on the subject matter."  *Id.* (citing *Aetna Health v. Davila,* 542 U.S. 200 (2004)).  The presence of a federal question in a defensive argument does not justify removal.  *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392-93, 398-99 (1987).

Defendants argue that removal in this matter is proper because § 301 of the Labor Management Relations Act preempts (in other words, subsumes) Plaintiff's claims for invasion of privacy.  Section 301 provides,

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).   Congress drafted § 301 for the purpose of creating uniform federal common law to resolve disputes covered by collective bargaining agreements.  *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985).  The pre-emptive force of § 301 "is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *McCormick v. AT&T Technologies, Inc.* 934 F.2d 531, 534 (4th Cir. 1991) (quoting *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 23 (1983).  Section 301, therefore, preempts and removal jurisdiction is proper if resolution of the plaintiff's claims requires interpretation of a collective bargaining agreement. *See id.; also, Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988).  Section 301 does not, however, preempt "state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Caterpillar Inc.*, 482 U.S. at 395.  This is because, "§ 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." *Lingle*, 486 U.S. at 409.

Under the Fourth Circuit Court of Appeals's application, the reach of § 301 is broad. *See McCormick*, 934 F2d 531.  The *McCormick* court pointed out that "a collective bargaining agreement is more than a contract; it is a generalized code to govern a myriad of cases which the draftsman cannot wholly anticipate." *Id.* (quoting *United Steelworkers of America v. Warrior &*

*Gulf Navigation Co.,* 363 U.S. 574, 578 (1960) (internal quotation marks omitted).  Thus, it is not necessary for a collective bargaining agreement to specifically address a particular area of the employer-employee relationship, if the agreement explicitly reserves general rights of managing the operations.  *Id.*  In *McCormick*, an employee asserted state law tort claims after his employer searched his locker without consent.  *Id.*  In finding the employee's claims preempted by § 301, the court explained,

> [the] provisions of the collective bargaining agreement apply generally to the conditions of employment for union employees at AT&T.  The issuance of work lockers and tools by the company plainly is among these conditions of employment. The specifics as to management conduct regarding lockers and tools need not be spelled out in all their detail and refinement for the collective bargaining agreement to be applicable.

*Id.*  Because the collective bargaining agreement reserved, "[t]he right to manage the business and to direct the working forces and operations of the same, subject to the limitations of [the collective bargaining agreement]," the court held that interpretation of the collective bargaining agreement was integral to determining the employer's standard of care over it's employee's lockers.  *Id.*

The broad interpretation of § 301 preemption in the Fourth Circuit has been tempered by a few explicit exceptions.  These have principally been found in situations where a collective bargaining agreement could not purport to cover particular conduct, because if it did it would be unenforceable as a matter of public policy.  *Jackson v. Kimel*, 992 F.2d 1318, 1326 (4th Cir. 1992); *see also, Harless v. CSX Hotels, Inc.,* 389 F.3d 444 (4th Cir. 2004).   In *Jackson,* an employee accused her supervisor of coercing her into sexual intercourse by threatening to withhold employment benefits and implying a threat to terminate her if she refused.  *Jackson*, 992 F.2d at

1321.  The *Jackson* court noted that the employer's conduct was "wrongful regardless of whether it was authorized by the collective bargaining agreement," as it was contrary to federal and state law, as well as state public policy.  *Id.* at 1326.  The court explained that if allegations were true, the supervisors actions "would be wrongful not because of a duty of care created or defined by the terms of the collective bargaining agreement, but because of the principles of state tort law."  *Id.* Similarly, in *Harless*, the court found that a plaintiff's claims for discriminatory discharge, based in the West Virginia Human Rights Act and West Virginia Worker's Compensation Act, did not require an interpretation of the relevant collective bargaining agreement and were not preempted by § 301 of the Labor Management Relations Act.

In the present case, Plaintiff asserts claims under state law for invasion of privacy.  Under the relevant case law it is necessary to determine whether the right of privacy implicated in this case is governed by a collective bargaining agreement or an independent source.  If, as in *McCormick*, the appropriateness of the employer's conduct towards its employee is defined in the collective bargaining agreement, then state law claims are preempted by the Labor Management Relations Act and removal is proper.  If on the other hand, as in *Jackson* and *Harless*, Plaintiff's claims depend on an independent right upon which the collective bargaining agreement cannot intrude, then state law will apply and the Court must remand the case.

In West Virginia, "[i]t is contrary to public policy . . . for an employer to require an employee to submit to drug testing since such test portends an invasion of an individual's right to privacy."   Syl Pt. 1, *Twigg v. Hercules Corporation*, 406 S.E.2d 52 (W. Va. 1991); Syl Pt. 1 *Baughman v. Wal-Mart Stores, Inc.*, 592 S.E.2d 824 (W. Va. 2003).  While testing under certain circumstances is permitted, to be consistent with policy an employer conducting such testing must

-6-

either have a "reasonable good faith . . . suspicion of an employee's drug usage," or employ the tested worker in a position which involves "public safety or the safety of others." *Id.* Syl Pt. 2. Thus, in West Virginia, random drug testing by a private employer violates a fundamental principles of public policy.[2]

Because random drug testing of employees contravenes West Virginia public policy, a company's drug testing policy may not be enforceable – as a matter of state law – even if authorized by a collective bargaining agreement.  In the present case the applicable collective bargaining agreement reserved substantial rights for Felman to manage its business affairs.  *See* (Collective Bargaining Agreement, Def.'s Exh. B at ¶ 3.01, (Doc. 1 Attach 2) ("All of the rights, functions and prerogatives of management that are not expressly and specifically restricted or modified by one or more explicit provisions of this Agreement are reserved and retained exclusively to the Company.") In addition, Felman specifically stated its right to "make and enforce such new rules applicable to employees covered by this Agreement . . . unless expressly prohibited from so doing by some explicit provision of this Agreement." *Id.*  As the collective bargaining agreement does not specifically address drug testing protocol, it is likely that the company was within its rights – as

---

[2]In *Twigg,* the court was somewhat elusive in its articulation of the source of this right.  The court based its holding on its prior decision in *Cordle v. General Hugh Mercer Corp.*, 325 S.E.2d 111 (W. Va. 1984), which had pronounced forced polygraph examination of private employees against public policy.  *See Twigg*, 406 S.E.2d at 54-55.  The *Twigg* opinion noted that *Cordle* referenced a state statute limiting the use of polygraph analysis in the workplace. *Id.*  (citing *Cordle,* 325 S.E.2d at 117, in turn quoting W.Va. Code, 21-5-5b (1983)).  The *Twigg* court also explained, however, that "[e]ven though our holding in *Cordle* referred to the above statute, it is important to note that the statute was not in effect at the time the facts for that case arose.  Consequently, the basis for finding the existence of a substantial public policy at the time of the controversy was not the above statute." *Id.*  at n. 5.  Regardless of where the right originates, it is now black letter law in West Virginia that random drug testing violates a substantial public policy, as the holding of *Twigg* has been reaffirmed by the state supreme court in *Baughman,*  592 S.E.2d 824.

reserved by the collective bargaining agreement – when it instituted its drug testing policy.  Plaintiff alleges, however, that he was subjected to testing even though he was not working in a safety sensitive position and without reasonable good faith suspicion that he might have been using drugs. Pl.'s Compl. at ¶ 12-13, 16-17. In such circumstances, although the drug testing procedures might have been consistent with rights created by the collective bargaining agreement, they were inconsistent with fundamental public policy of the state of West Virginia.  In other words, if allegations prove true, Defendants' drug testing of employees, such as Plaintiff, violated rights independent of those created and guaranteed by the collective bargaining agreement.

Because Plaintiff's claims rest in rights created by state law and not those within the collective bargaining agreement, § 301 of the Labor Management Relations Act will not preempt. No federal question is presented in the face of the complaint.  Defendants have not met their burden in demonstrating that removal jurisdiction is proper and this case must be remanded back to the Circuit Court of Mason County, West Virginia.

### Conclusion

For reasons explained above, because this Court does not have subject matter jurisdiction over these proceedings, the Plaintiff's Motion to Remand (Doc. 6) is hereby **GRANTED**.  The Court **ORDERS** this case be stricken from the docket and remanded to the Circuit Court of Mason County, West Virginia.

In addition, this case was designated as the lead case among thirteen similar actions, for consideration of the motion to remand.  The reasoning  and ultimate decision to remand this case is applicable to each of the other twelve related cases.  As a result, the Court **ORDERS** the following cases be remanded to state court: (No. 3:09-cv-1130) *Dennison v. Felman Production,*

*Inc.;* (No. 3:09-cv-1131) *Gibbs v. Felman Production Inc.;* (No. 3:09-cv-1132) *Hall v. Felman Production, Inc.;* (No. 3:09-cv-1133) *Lieving v. Felman Production Inc.;* (No. 3:09-cv-1134) *Petrie v. Felman Production, Inc.;* (No. 3:09-cv-1136) *Rickard v. Felman Production, Inc.;* (No. 3:09-cv-1137) *Salla v. Felman Production, Inc.;* (No. 3:09-cv-1138) *Sowards v. Felman Production, Inc.;* (No. 3:09-cv-1139) *Stout v. Felman Production, Inc.;* (No. 3:09-cv-1140) *Taylor v. Felman Production, Inc.;* (No. 3:09-cv-1142) *Weethe v. Felman Production Inc.;* (No. 3:09-cv-1143) *Whalen v. Felman Production, Inc.*

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:    December 23, 2009

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE